Caruthers, J.,
delivered the opinion of the Court.
This is an appeal by the complainant, from a decree of the Chancery Court at Greeneville, dismissing his bill.
*628 The object of the hill is to remove clouds from his title to a tract of land of 260 acres, in the possession of defendant, Young, and for other purposes.
John Weems sold the land to Young in 1843, with some personal property, for upwards of $3000,' who soon after paid all the purchase money hut $300, for which he executed his note, and took a title hy deed. This note was assigned to complainant. He obtained judgment upon it in July, 1851, and had the land levied upon and sold, and he became the purchaser, and has the sheriff’s deed. This is his title. He claims that this debt was a lien upon the land. This is not so. Where a deed is made, no lien for the consideration passes to the endorsee. Green and others vs. Demoss and others, 10 Humph., 371.
The title derived from Weems, was defeated in 1843, by the sale of the land under a judgment against Weems, by which it was bound. Under this sale, it was purchased by E. J. McKinney, and by him after-wards sold and conveyed to Young. Eor the consideration agreed to be paid to McKinney, James Kinney become his surety in a note dated 3d September, 1849, the time of the trade, and due 1st September, 1851. A deed of trust was given by Young upon this tract of land to secure the said James Kinney. Under. that deed of trust the land was sold in September, 1852, and bought by Weems, from whom it was redeemed by Young in August, 1854; so the title was again vested in the said Young.
At the date of complainant’s judgment, levy and salej. in 1851, it will be seen that this large debt secured *629 by the deed of trust to Kinney in 1849, "was all unpaid.
In 1845, Young made a deed of trust upon the same land, appointing Moses Brown trustee, to secure sundry creditors. And it appears hy the answer of Young to the interrogatories of the hill, that there were upwards of $800 of those debts due at the time the complainant bought the land under his execution. But it is insisted that this deed was void, because, in addition to other objections, some of the personal property included in it, was consumable in . the use. Upon examination of the deed, we think this objection cannot be maintained. The articles to which this objection is applied are, “ ten head of young cattle, twenty head- of hogs, thirteen old sheep, and six lambs, two bee palaces, two vinegar kegs.” None of this property is necessarily consumable in the use; and that is the test. It is all susceptible of being used without consumption. But it is unnecessary to investigate the validity of this deed, because there is no question as to the existence of the deed of trust to Kinney of 1849, and that unsatisfied at the date of the complainant’s levy and purchase. This will raise the question on which the case must turn, as effectually as if both deeds were unquestionable.
If the case was as stated in the bill, that is, that the debts secured in both these deeds of trust had been paid off, or that the deeds were both fraudulent, then the complainant would have a case for discussion, and perhaps for relief. But according to the case made out, at the time he made his levy and purchase, there was no title in his debtor; he had a bare equity of redemp *630 tion. The legal title was in the trustees. There was certainly no title in Young, subject to levy and sale. No right then, passed to the purchaser. Before a party can stand in a Court of Equity to ash a removal of clouds from his title, he must show that he has a good title himself. In this case, the complainant has no title at all, but only the appearance of it, as there .was no legal interest in Young, his debtor', at the time of his levy and sale, subject to execution at law. He might have filed a bill after obtaining his judgment at law, to have enforced the foreclosure of the mortgages, and reached the overplus for the satisfaction of his debt. But this he did not attempt to do, but proceeded upon the ground, that the mortgages were void, or had been discharged by the payment of the debts they were made to secure. If he had succeeded in this, he would have a good case. But, as we have seen, he has failed on both grounds, and therefore he has no ground to stand upon in equity.
Another position assumed in the argument is, that as Young became invested with the title after the trust sale by the trustee, Kinney, in 1853, the same should enure to him, and make perfect the title obtained by him, under his execution sale of 1851. This is not a case for the application of that doctrine. He was a purchaser under the maxim of caveat emptor, and had no warranty or other obligation upon Young for title. He obtained nothing by his purchase, to which any thing could attach by enurement or otherwise. There is no principle of equity to aid him in his dilemma.
Whether he might not, by a proceeding under our recent statute on that subject, have the satisfaction of his *631 execution set aside, and then proceed against this land or any other property of Young’s, is another question, and one with which we have nothing to do under this bill.
It seems that a small tract of land was included in the levy and sale, which is not embraced in the deeds of trust, and was perhaps unincumbered. As to that, he may have obtained a good title; at least, that is not aifected by this proceeding.
The decree of the Chancellor dismissing the bill, will be affirmed.